Bruno MONTANO, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 45A04–9408–PC–335.

Court of Appeals of Indiana, Fourth District.

April 27, 1995.

Transfer Denied July 3, 1995.

---

Susan K. Carpenter, Public Defender of Indiana, Linda G. Nicholson, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

RILEY, Judge.

Petitioner–Appellant Bruno Montano appeals from the denial of his Ind.Post–Conviction Rule 1 Petition for Post–Conviction Relief.

We affirm.

### ISSUES

Montano presents five issues for our review which we consolidate and rephrase as:

1. Did the post-conviction court err when it denied Montano relief based on fundamental error and ineffective assistance of counsel?

2. Did the trial court err when it sentenced Montano?

### FACTS

On June 22, 1982, Montano killed his mother and six-year-old niece by striking them with a heavy metal wrench. A jury found him guilty but mentally ill of voluntary manslaughter for the death of his mother, and guilty but mentally ill of murder for the death of his niece. He was sentenced to 20 years for the voluntary manslaughter conviction and 45 years for the murder conviction. This decision was affirmed by our supreme court in *Montano v. State* (1984), Ind., 468 N.E.2d 1042.

On August 8, 1986, Montano filed a *pro se* petition for post-conviction relief which was amended on March 12, 1992, and December 21, 1992. A hearing was held on May 14, 1993, and on May 6, 1994, the trial court issued findings of fact and conclusions of law denying relief from which Montano now appeals.

### DISCUSSION

■ Generally, the petitioner in a post-conviction relief proceeding bears the burden of establishing the grounds for relief by a preponderance of the evidence. *Babbs v. State* (1993), Ind.App., 621 N.E.2d 326, 329, *trans. denied* (citations omitted). On appeal from a denial of post-conviction relief, we neither reweigh the evidence nor judge witness credibility. *Joseph v. State* (1992), Ind. App., 603 N.E.2d 873, 876 (citations omitted). To prevail on appeal, the petitioner must satisfy the reviewing court that the evidence, without conflict, leads inevitably to a conclusion opposite of the trial court. *Babbs*, 621 N.E.2d at 329.

I.

■ A post-conviction proceeding is not a "super-appeal" and when a petitioner has already been afforded the benefit of a direct appeal, post-conviction relief contemplates a rather small window for further review. *Id.* Error available on direct appeal is usually waived for purposes of post-conviction relief, *Capps v. State* (1992), Ind.App., 598 N.E.2d 574, 577, *trans. denied.*; however, a small exception to this rule exists. An error cannot be waived by a previous appeal if the error is fundamental in nature.

■ To rise to the level of fundamental error, an error "must constitute a clearly blatant violation of basic and elementary principles, and the harm or potential for harm must be substantial and appear clearly and prospectively." *Ried v. State* (1993), Ind.App., 610 N.E.2d 275, 281, *aff'd*, Ind., 615 N.E.2d 893. To fall within this exception, error must be such that if not rectified it would deny the defendant fundamental due process. *Id.*

■ A petitioner for post-conviction relief may also, in some circumstances, raise

the issue of ineffective assistance of counsel. As a general rule, ineffective assistance of counsel is an issue known and available at the time of the direct appeal. *Burris v. State* (1992), Ind.App., 590 N.E.2d 576, 578, *trans. denied.* If trial counsel and appellate counsel are different, as in this case, appellate counsel has the first opportunity to present the issues, and failure to do so will generally be held a waiver of the issue. *Id.* To avoid waiver, a petitioner must argue that appellate counsel was ineffective in that he failed to raise ineffective assistance of trial counsel. This is the narrow category into which Montano's ineffective assistance argument must fall in order to succeed.

## A. Standard for Determining Competence

■ Initially, Montano asserts that the "attempt to reach a decision concerning [a defendant's] competency to stand trial without either an assigned burden of proof or a standard of proof is constitutionally inadequate to assure a defendant the level of due process required by the Fourteenth Amendment." Appellant's Brief at 22. He contends that "there has never been an appellate reversal in this state finding a trial judge has abused his discretion in finding a defendant competent to stand trial." *Id.* at 25. Montano argues, without reference to authority, that "to assure due process fundamental fairness in criminal competency proceedings, the burden of proof must be assigned to one party or the other to show that the defendant either is or is not competent to stand trial." *Id.* at 26. We do not agree.

Montano's argument merely revisits an issue addressed by both this court and our supreme court in *Wallace v. State* (1985), Ind., 486 N.E.2d 445, *reh'g denied, cert. denied,* (1986), 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 723, and *Hensley v. State* (1991), Ind.App., 575 N.E.2d 1053, *trans. denied.* In *Hensley,* the defendant challenged the discretionary function of the trial court in determining a defendant's competency. He contended that the State should be charged with the burden of proving, by clear and convincing evidence, that the defendant is competent to stand trial. In that case, Judge Sullivan stated:

Our [s]upreme [c]ourt in *Wallace* held that the failure to allocate the burden of proving competency to stand trial under our current statutory scheme to stand trial does not offend due process. Hensley argues that the court in *Wallace* held only that the statute was not unconstitutional because it did not allocate the burden of proving incompetency to the defendant. He contends that the court did not address the failure to place the burden on the State and therefore the issue is still ripe for our determination. We disagree with Hensley's narrow interpretation of the *Wallace* decision.

The clear implication of *Wallace* is that the court may have considered the competency statute to be unconstitutional if it had required the defendant to prove his own incompetency. Because our statute does not allocate the burden to the defendant, it does not violate due process. The fact that the statute does not allocate the burden of proving competency to the state is of no moment.

*Hensley,* 575 N.E.2d at 1055.

Further, Montano's argument which purports to rely on *Medina v. California* (1992), —— U.S. ——, 112 S.Ct. 2572, 120 L.Ed.2d 353, *reh'g denied,* —— U.S. ——, 113 S.Ct. 19, 120 L.Ed.2d 946, a recent U.S. Supreme Court decision, is of no merit because that case does little more than strengthen our existing precedent. The Supreme Court reasserted that the analysis to be used in analyzing due process challenges to state criminal procedure was indeed a narrow one:

[W]e should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States. Among other things, it is normally within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion and its decision in this regard is not subject to proscription under the Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.

*Id.* at ——, 112 S.Ct. at 2577 (quoting *Patterson v. New York* (1977), 432 U.S. 197, 201–02, 97 S.Ct. 2319, 2322, 23, 53 L.Ed.2d 281) (citations and quotations omitted). The Supreme Court concluded that due process is satisfied when a State provides a defendant access to procedures for making a competency evaluation.

> The Due Process Clause does not, however, require a state to adopt one procedure over another on the basis that it may produce results more favorable to the accused. Consistent with our precedent, it is enough that the State affords the criminal defendant on whose behalf a plea of incompetency is asserted a reasonable opportunity to demonstrate that he is not competent to stand trial.

*Medina,* —— U.S. at ——, 112 S.Ct. at 2580.

Ind.Code 35–36–3–1 *et seq.* (1993) which governs competence to stand trial survives the analysis espoused by the Supreme Court. We find no error, fundamental or otherwise, here.[1]

### B. Jury Instructions

■ Montano next seeks relief on the grounds that the trial court erred when it instructed the jury on two issues. Like the previous issue, Montano's trial counsel failed to tender proper instructions and failed to object to the instructions as given, thus the present issue would have only been available to Montano's appellate counsel if the failure of the trial court rose to fundamental error. Because we find that it does not, appellate counsel was not ineffective when he failed to raise this issue on appeal.

Montano contends that Final Instruction No. 6 fails to state that the State bore the burden of rebutting sudden heat beyond a reasonable doubt. This argument can only be applied to Montano's conviction of guilty but mentally ill of murder for the death of his niece, because the jury found him guilty but mentally ill of voluntary manslaughter for the death of his mother. Montano argues that once sudden heat is raised, the burden is on the State to rebut it beyond a reasonable

doubt, and that failure to instruct the jury properly is both fundamental error and ineffective assistance, relying on *Palmer v. State* (1991), Ind., 573 N.E.2d 880.

■ In our review of the propriety of a trial court's decision to give an instruction, we look to see whether the instruction correctly states the law; whether the record contains evidence to support the giving of the instruction; and whether the substance of the tendered instruction is covered by other instructions which were given. *Evans v. State* (1991), Ind., 571 N.E.2d 1231, 1236. An instruction which is given without evidence to support it is not grounds for reversal unless the complaining party establishes that he was prejudiced thereby. *Evans v. Schenk Cattle* (1990), Ind.App., 558 N.E.2d 892, 893, *trans. denied.*

■ An instruction on voluntary manslaughter is not required absent evidence of "sudden heat," which is defined as anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person, which prevents deliberation and premeditation, excludes malice, and renders a person incapable of cool reflection. *Baird v. State* (1992), Ind., 604 N.E.2d 1170, 1178, *cert. denied,* —— U.S. ——, 114 S.Ct. 255, 126 L.Ed.2d 208. Evidence of anger without provocation is not sufficient to support a voluntary manslaughter instruction. *Matheney v. State* (1992), Ind., 583 N.E.2d 1202, 1205, *cert. denied,* 504 U.S. 962, 112 S.Ct. 2320, 119 L.Ed.2d 238.

■ A review of the record reveals that Montano was not entitled to any instruction on voluntary manslaughter with respect to the death of his six-year-old niece. Here, "the apparent reason for the incident was that Defendant's mother was in the process of preparing papers to commit [Montano] to a mental institution and [Montano] did not want to return to the hospital." *Montano,* 468 N.E.2d at 1044. We find no evidence that Montano's niece provoked Montano in any manner, thus he was not entitled to the

---

1. Montano's trial counsel did not preserve this issue for appellate review, thus, appellate counsel could only have raised this issue if it was fundamental in nature. Because we have found no

fundamental error, appellate counsel could not have been ineffective for not raising this issue on direct appeal.

instruction for her death, and the giving of the allegedly flawed instruction does not rise to an error which is fundamental in nature. *See Hensley v. State* (1986), Ind., 499 N.E.2d 1125, 1127 (Defendant not entitled to reversal based on incorrect instruction on attempted voluntary manslaughter when there was no evidence of provocation or sudden heat).

■ Montano also contends that the trial court erred in instructing the jury regarding the preponderance of evidence on the issue of insanity. He argues that Preliminary Instruction No. 8 and Final Instruction No. 9 told the jury that preponderance means the weight of the evidence; however, it did not convey the idea that the jury must be convinced that Montano was more probably insane than sane from the evidence. We do not agree.

■■ Jury instructions are not considered in isolation, but rather as a whole and with reference to each other. *Reinbold v. State* (1990), Ind., 555 N.E.2d 463, 467. Error in a particular instruction will not warrant reversal unless the error is of such a nature that the whole charge of which it forms a part misleads the jury as to the law of the case. *Jewell v. State* (1989), Ind., 539 N.E.2d 959, 961. In this case, Montano overlooks Preliminary Instruction No. 9 and Final Instruction No. 8 which stated:

> If you are convinced from all the evidence in the case the defendant was more probably insane than sane, then you should find the defendant not responsible by reason of insanity.

(R. at 51, 77).

The instructions read as a whole, properly instructed the jury regarding the preponderance of the evidence on the issue of insanity. *See Van Orden v. State* (1984), Ind., 469 N.E.2d 1153, 1159, *cert. denied*, 471 U.S. 1104, 105 S.Ct. 2335, 85 L.Ed.2d 851 (approving similar instructions). We find no error.

### C. Prosecutorial Misconduct

■ Montano also contends that throughout the trial the prosecutor engaged in a pattern of questioning witnesses as to whether they feared Montano or believed he was capable of committing future dangerous acts. He argues that this pattern of questioning was an evidentiary harpoon, deliberately placing inadmissible evidence before the jury solely to prejudice him.

In this case, the prosecutor asked Montano's three siblings if they were afraid of him. Trial counsel did not object when the question was asked of one sibling; he objected but was overruled when the question was asked of the second sibling; and his objection was sustained when the question was asked the third time. The prosecutor also asked two of the doctors who examined Montano, if they believed he could kill again. There was no objection the first time a doctor was asked; and an objection was overruled when the question was asked of the second doctor.

The trial counsel failed to object to two of the five questions waiving them for review on direct appeal, absent a showing that the error was fundamental by appellate counsel. An additional question was objected to successfully. Only two of the questions, one to a sibling and one to a doctor would have been properly before the court on direct appeal; however, although this issue was known and available at the time of direct appeal, appellate counsel failed to raise it and thus waived review for this appeal, absent a showing that the error was fundamental in nature. Thus, we concentrate our review of the fundamental nature of the alleged prosecutorial misconduct because a finding that the alleged error was not fundamental would preclude any review of appellate counsel's conduct. We note that only two of five instances of alleged misconduct elicited testimony which could be considered damaging to Montano: one of Montano's siblings testified that she was afraid of him, and one doctor testified that Montano could kill again.

■ When reviewing a claim of prosecutorial misconduct we first determine whether the prosecutor engaged in misconduct. Then, we see if the misconduct placed the defendant in a position of grave peril. *Burris v. State* (1984), Ind., 465 N.E.2d 171, 186, *cert. denied* (1985), 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed.2d 809. Whether the defendant is placed in grave peril is determined by "the probable persuasive effect of the misconduct on the jury's decision." *Id.* at 187.

▮ When a defendant invokes the defense of insanity he opens up his conduct for examination. *Miller v. State* (1988), Ind., 518 N.E.2d 794, 796, *reh'g denied.*

> Evidence which might otherwise be inadmissible becomes admissible when there is a question of sanity. All evidence, remote as it may be, having a logical reference to appellant's sanity is admissible on that issue. The remoteness in time and the difference in factual settings are all matters to be weighed by the jury.

*Id.* Testimony as to Montano's mental state as perceived by his siblings and doctors was probative as to whether he was insane at the time he killed his mother and niece. Thus, the questions posed by the prosecutor did not constitute misconduct.

Even if the questions constituted misconduct, in light of the evidence supporting the verdicts, the prejudicial answers to the questions had little, if any persuasive effect on the jury. Any error in allowing witnesses to answer the two questions does not rise to a fundamental level.

## II.

▮ Montano contends that the trial court erred in sentencing him when it used the facts that Montano used alcohol against the advice of his doctors, that he acted against his mother because he feared she was going to have him recommitted to a mental hospital, and that his illness was incurable to enhance his sentence.

▮ The sentencing court is vested with wide discretion to determine whether the presumptive sentence will be enhanced because of aggravating factors involving the particular defendant or crime. *Shippen v. State* (1985), Ind., 477 N.E.2d 903, 905. A sentence may be enhanced when the trial court finds only one aggravating factor to justify the imposition of an enhanced sentence. *Duvall v. State* (1989), Ind., 540 N.E.2d 34, 36. Further, the finding of mitigating factors is not mandatory but rests within the sound discretion of the trial court. *Magers v. State* (1993), Ind., 621 N.E.2d 323, 324. A trial court is not obligated to accept a defendant's version of what constitutes mitigating circumstances, nor is it obligated to explain why it has chosen not to make a finding of mitigation. *Id.; Gaddie v. State* (1991), Ind., 566 N.E.2d 535, 538.

In addition to the aggravating factors of which Montano complains, the trial court found that the "imposition of a reduced sentence would depreciate the seriousness of the crime" and the "victim in Count II was a child of six (6) years of age." These are sufficient to support the sentence imposed by the trial court. *See Wade v. State* (1986), Ind., 490 N.E.2d 1097, 1105 (Upholding enhancement of defendant's sentence for murder on the basis that the victim was a two-year-old child, and that imposition of a lesser sentence would depreciate the seriousness of the crime). We find no error here.

Judgment affirmed.

CHEZEM and BARTEAU, JJ., concur.