Henry HENSLEY, Appellant
(Defendant below)

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 784S278.

Supreme Court of Indiana.

Nov. 20, 1986.

Susan K. Carpenter, Public Defender, Kenneth M. Stroud, Sp. Asst., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant was charged with attempting to murder his daughter and his wife. He was convicted for the attempted murder of his daughter, Ind.Code §§ 35–42–1–1, 35–41–5–1 (Burns 1979 Repl.). The trial court imposed a prison term of thirty years.

Hensley raises two issues in this direct appeal:

(1) Whether the trial court committed reversible error by failing to instruct the jury properly on the lesser included offense of attempted voluntary manslaughter, and

(2) Whether appellant's intoxication rendered his statements to police involuntary and inadmissible.

The evidence at trial revealed that the Hensley residence had been the site of domestic disputes on several occasions prior to the date of the charged offenses. A divorce was pending. One of appellant's sons testified that his father threatened the children that, if they called the police, "they were gonna get it." Prior to the attempted murder, appellant threatened one of his sons with a knife. Hensley's daughter, Bobby Jo, sought the aid of the marshal, who lived one block away. When the marshal arrived at the house, he arrested appellant.

On December 17, 1982, appellant went to the house of his estranged wife twice. During his first visit, he asked who reported the knife incident to the marshal and yelled at his daughter Bobby Jo, stating that she should respect her father and not be "working for" the marshal. Appellant left the house, saying he would return. Hensley returned ten minutes later carrying a long box. He opened the box in the living room and removed a loaded .22 caliber rifle.

Appellant learned from one of his sons that Bobby Jo was in her bedroom. Outside her door, Hensley stated, "Bobby, you done me wrong, so ...". Frightened by the earlier confrontation with her father, Bobby Jo had locked her bedroom door and was attempting to flee through the window when her father entered the room. Hensley fired once and missed; he fired a second time and seriously injured his daughter. After shooting her, appellant stated she had "done him dirty."

Mrs. Hensley ran to Bobby Jo's room and struggled with her husband in an attempt to disarm him. The gun discharged, wounding the wife. A few minutes later, two brothers ran out of the house, yelling to their older brother, Jessie, "Dad ... shot [our] sister." Jessie ran to Bobby Jo's bedroom and saw his parents struggling over the gun. Jesse grabbed the rifle; his father followed him, demanding "the gun back so he could finish the job."

Town marshal Walter Huffman was informed of a shooting at the Hensley residence. When he arrived, he apprehended appellant, who was starting his vehicle in the driveway. Huffman found Mrs. Hensley lying on the living room couch and Bobby Jo lying on the floor of her bedroom.

## I. Instruction on Attempted Voluntary Manslaughter

Appellant argues that the trial court erred by failing to give correct instructions on the lesser included offense of attempted voluntary manslaughter. He maintains that the instructions read to the jury contained contradictions and ambiguities which

rendered it unclear whether the jury was charged on the law of attempted voluntary manslaughter or voluntary manslaughter.

■ The court charged the jury with two instructions on attempted voluntary manslaughter which were similar to those tendered by Hensley. Appellant concedes that he did not adequately preserve this issue for appellate review by objecting when the instructions were read but requests we address this issue under the doctrine of fundamental error. In order to rise to the level of fundamental error, the error must constitute a clearly blatant violation of basic and elementary principles, and the resulting harm or potential for harm must be substantial. *Wright v. State* (1985), Ind., 474 N.E.2d 89.

■ Charging the jury with the challenged instructions was error, not because of the substance of the charge, but because there was no evidence in the record of provocation or sudden heat. An instruction on attempted voluntary manslaughter is proper only when there is some evidence of provocation or sudden heat to support it. *Cf. McCarty v. State* (1986), Ind., 496 N.E.2d 379; *Malott v. State* (1985), Ind., 485 N.E.2d 879 (proper for trial court to refuse tendered instructions which are not supported by the evidence.)

■ In this case, appellant's substantial rights were not prejudiced by the recitation of these instructions. Hensley was not entitled to an instruction on attempted voluntary manslaughter and thus giving an incorrect definition of that offense cannot be a basis for reversal of the attempted murder conviction. The jury clearly had adequate evidence before it to find that appellant was guilty of attempted murder.

## II. Statements Given to the Police

Appellant argues that the trial court erred by admitting the statements he made to Marshal Huffman because his intoxicated state precluded a voluntary and intelligent waiver of his *Miranda* rights. Assuming *arguendo* that appellant's intoxicated state rendered his waiver of rights invalid, we find that the admission into evidence of the statements he gave to the marshal to be harmless error beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

After the marshal advised appellant of his *Miranda* rights in the police car, the marshal inquired, "Henry, have you got yourself in trouble?" Hensley responded that he brought a .22 caliber rifle to his wife's house as a Christmas present for his son Jesse; the gun was loaded. Hensley stated that they were "showing or playing" with the gun when it discharged. After Hensley stated that he had consumed a few beers, he invoked his right to remain silent and the marshal ceased questioning.

Several family members testified at trial about statements made by appellant during the incident. Outside Bobby Jo's bedroom door, appellant told Bobby Jo that she had "done [him] wrong, so...." After shooting her, appellant stated that she had "done him dirty." After Jesse gained control of the rifle from his father, appellant demanded "the gun back so he could finish his job."

■ Hensley's custodial statement indicated that he brought a rifle to his wife's house. Taken together, the admissible statements appellant made in the presence of his family and overwhelming direct evidence of matters not in dispute are the practical equivalent of the substance of the custodial statement. *Cf., Malott,* 485 N.E.2d 879. Appellant was not burdened by his custodial statements because the introduction of these statements neither forced him to take the stand to deny the substance of the statements nor constricted defense counsel's choice of trial tactics. *Lloyd v State* (1983), Ind., 448 N.E.2d 1062; *Greer v. State* (1969), 252 Ind. 20, 245 N.E.2d 158.

The judgment of the trial court is affirmed.

GIVAN, C.J., and PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., concurs in result.