## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 13 2019, 10:04 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Servadio Montel Boyd
Branchville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Servadio Montel Boyd,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

February 13, 2019

Court of Appeals Case No.
82A05-1703-PC-715

Appeal from the Vanderburgh
Circuit Court

The Honorable Kelli E. Fink,
Magistrate

Trial Court Cause No.
82C01-1509-PC-4844

**Tavitas, Judge.**

# Case Summary

[1] Servadio Montel Boyd, pro se, appeals the denial of his petition for post-conviction relief ("PCR"). We affirm.

# Issues

[2] Boyd raises three issues on appeal, which we restate as follows:

> I. Whether the trial court erred in denying Boyd's motion to withdraw his guilty plea.
>
> II. Whether Boyd received ineffective assistance of trial counsel.
>
> III. Whether Boyd received ineffective assistance of post-conviction ("PC") counsel.

# Facts

[3] On July 18, 2014, Boyd delivered a quantity of cocaine, in excess of ten grams, to a person in Vanderburgh County, Indiana. Also, in agreement with one or two other men, Boyd agreed to deliver a quantity of cocaine, exceeding ten grams, to another person. Boyd obtained and concealed the cocaine in a specifically-engineered secret compartment inside a vehicle, transported, delivered, and sold the cocaine to another person.

[4] On July 22, 2014, and January 26, 2015, respectively, the State charged Boyd with dealing in cocaine and conspiracy to commit dealing in cocaine, as Level 2

felonies. The trial court appointed Attorney John Brinson to represent Boyd.[1] Boyd's jury trial was slated for February 17, 2015. On that date, before voir dire commenced, Boyd and the State advised the trial court that they had reached a plea agreement. Boyd pleaded guilty to both charged offenses that day.[2]

[5] Shortly after Boyd entered his guilty plea, Boyd consulted with his family and retained Attorney Barry Blackard. Attorney Brinson withdrew his appearance. On March 19, 2015, Boyd moved to withdraw his guilty plea. On May 1, 2015, which was Boyd's intended sentencing date, the trial court heard argument on Boyd's motion to withdraw his guilty plea. In support, Attorney Blackard argued:

> Mr. Boyd and I are both aware of the Court's policy on accepting plea agreements and it is frowned upon very heavily to enter into a plea agreement after a jury has been called and seated, and then when the Court allows that person to enter into a plea agreement, and then make the request that they withdraw from that plea agreement, we're aware of that and we understand that position, but Judge there's significant distinction here . . . and it's very unorthodox and it's something that I've not seen very often and that's the fact that the State is joining in the motion to allow Mr. Boyd to withdraw from his plea agreement. Due to the circumstances which I feel are (inaudible) . . . , I'd ask that Mr. Boyd be permitted to withdraw from the plea agreement. I

---

[1] The trial court appointed Attorney Brinson on July 24, 2014.

[2] The trial court scheduled Boyd's sentencing for May 1, 2015.

understand the fact that the Court will not accept any other plea agreements in this case, and this be set for a firm trial date and we'd be ready to proceed.

THE COURT: Alright, [State].

THE STATE: Your Honor, very briefly, State is joining in the motion . . . .

THE COURT: I understand the position of both defense and the State in this case, however Mr. Boyd I took your plea, I did your plea hearing, I did it on the morning of a jury trial when we had 40 to 50 jurors called in here, and I was very specific with you and very careful in giving you the advisement during the plea. I specifically asked you if you understood the proceeding and if you knew everything that was going on. I went over the terms of the agreement with you. You indicated to me that you understood the terms of the agreement and that that was your agreement with the State of Indiana. I asked you if you understood that if you admitted and plead [sic] guilty the Court could proceed with judgment and sentence. I also specifically asked you if anyone had made any threats to you and if this was voluntarily made by you. You indicated you were entering the plea voluntarily and I was very specific with you and because of that I'm not going to grant your Motion to Withdraw your Plea. So, the Court denies that motion at this time, and I'm ready to proceed with sentencing, but I'll let you talk to your client for a minute.

MR. BLACKARD: Mr. Boyd, do you understand what the Court's ruling is?

[BOYD]: Yes.

MR. BLACKARD: And is there anything that you want to make part of the record as far as any conversations that you and Mr. Brinson had as far as plea negotiations and explain to the Court when you entered into this plea agreement why you did, when you did and why you did it that way, it's important for you to make that clear for the record.

[BOYD]: When I received the new count on the thing and you was [sic] reading it I didn't know what that meant, I mean you was reading all the counts and I didn't even know what it was and I never received the actual file to even see with my own eyes what was read.

THE COURT: Go ahead, I want you to, I want to allow you to finish making your record and your comments, Mr. Boyd. Do you have anything else you want to say? I would have specifically read to you the charges and ask if you understood them and then asked if you were pleading guilty to them and then I would have gone over the elements of those offenses with you to make sure that you were admitting that you committed the offenses and that you were pleading guilty and understood the consequences, so I want to make sure you make your record, but that's a brief explanation of the basis of my decision. Any other record, Mr. Blackard?

MR. BLACKARD: Just briefly Your Honor. Mr. Boyd, is it your contention as you sit here today that the charges that you plead [sic] guilty to you are not guilty of those charges, is that your contention?

[BOYD]: Yes.

MR. BLACKARD: Why did you plead guilty to something that you're not guilty of?

[BOYD]: Because the day of trial, I mean they come [sic] with a plea bargain that I never even had, my family wasn't here, I never got to talk to them about this plea bargain or nothing, so I feel like I was forced into taking it.

MR. BLACKARD: There's a question the Judge asked you in your advisement, has anybody promised you, threatened you, and most importantly, forced you to accept the plea and I assume that your answer at the time of the advisement was nobody was forcing you, do you feel differently about that today?

[BOYD]: Yes.

Tr. Vol. II pp. 20-24. After denying Boyd's motion to withdraw his guilty plea, the trial court sentenced Boyd to two concurrent, thirteen-year terms in the Department of Correction. Boyd did not file a direct appeal.

[6] On September 10, 2015, Boyd, by Attorney Blackard, filed a petition for PCR. The PC court conducted an evidentiary hearing on Boyd's petition for PCR on May 26, 2016. At the hearing, Boyd testified that: (1) he felt forced into accepting the plea offer; (2) he did not understand the conspiracy to commit dealing charge when he pleaded guilty; (3) he did not have adequate time to

discuss his case with Attorney Brinson; and (4) he would not have entered the plea agreement if he had seen the State's body cam footage beforehand.[3]

[7] Next, Attorney Brinson testified that: (1) the State made its ultimate plea offer shortly before Boyd's trial commenced; (2) he explained the State's "take it or leave it" offer to Boyd "the best [Brinson] could" and under "a great deal of time pressure," *id.* at 46, 47; (3) Boyd wanted to confer with his father, who was unavailable, about the offer; and (4) "there wasn't going to be a continuance," with potential jurors onsite and awaiting voir dire. *Id.* at 47. Also, Attorney Brinson denied Boyd's claim that Brinson failed to properly and timely advise Boyd of ongoing plea negotiations. Brinson testified further that, in his view, the State did not oppose Boyd's motion to withdraw his guilty plea because deputy prosecutor Brandt felt he (Brandt) had made a bad deal with Boyd and preferred, instead, to proceed to trial. Lastly, although the parties agreed to submit Brandt's testimony by affidavit, the PC court never received the affidavit.[4]

---

[3] The State's body cam footage was at issue in three motions to suppress filed by Attorney Brinson on Boyd's behalf.

[4] The affidavit was intended to establish "whether or not the State of Indiana by Mr. Brandt joined in the motion to withdraw the plea agreement." Tr. Vol. II pp. 56-57. Neither party disputes this fact.

On July 7, 2016, the PC court entered its findings of fact and conclusions of law, wherein it denied Boyd's petition for PCR. Boyd now appeals.

## Analysis

Boyd appeals the denial of his petition for PCR. Our supreme court has stated:

> The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. [Where, as here, a post-conviction court has made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we] do not defer to the post-conviction court's legal conclusions[.] A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made.

*Hollowell v. State,* 19 N.E.3d 263, 268-69 (Ind. 2014) (internal quotations and citations omitted). As the clearly erroneous standard "is a review for sufficiency of evidence, we neither reweigh the evidence nor determine the credibility of witnesses." *State v. Greene,* 16 N.E.3d 416, 418 (Ind. 2014). "Rather, we 'consider only the evidence that supports that judgment and the reasonable inferences to be drawn from that evidence.'" *Id.* (quoting *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258-59 (Ind. 2000).

## I.    *Denial of Motion to Withdraw Guilty Plea*

Boyd argues that the trial court erred in denying his motion to withdraw his guilty plea. Specifically, Boyd contends that he felt forced into accepting the State's plea offer, which was tendered on the morning of his jury trial.

On this issue, the PC court found:

> 21. In addition, the trial court's denial of [Boyd]'s motion to withdraw his plea of guilty was an order that could have been appealed by [Boyd] and his counsel.
>
> 22. Post-conviction relief is not a substitute for a direct appeal. Holt v. State, 656 N.E.2d 495, 496 (Ind. Ct. App. 1995). Rather, post-conviction relief is reserved for those issues not known at the time of trial and direct appeal or for some reason not available to the defendant at that time. Id. A petitioner seeking post-conviction relief must show that the issues raised were unascertainable at the time of trial and direct appeal or the allegations arising from them are waived. Id.
>
> 23. [Boyd] has waived his right to challenge the trial court's denial of his motion to withdraw guilty plea because he failed to pursue a direct appeal of the denial as allowed under Indiana Code 35-35-1-4[(e)].
>
> 24. [Boyd] has failed to prove by a preponderance of the evidence that he is entitled to relief for the claims in his Petition for Post-Conviction Relief.

App. Vol. II pp. 19-22.

[12]     Indiana Code § 35-35-1-4 permits an individual to move to withdraw a guilty plea before sentencing. If a motion to withdraw a guilty plea is denied and the individual wishes to contest the trial court's decision, a direct appeal is the proper appellate procedure. *Brightman v. State,* 758 N.E.2d 41, 44 (Ind. 2001). If the individual fails to raise the issue on direct appeal, it is waived and may not be raised in a Post-Conviction Rule 1 proceeding. *See Collins v. State,* 817 N.E.2d 230, 232 (Ind. 2004) ("It is . . . well-settled that, because a post-conviction relief proceeding is not a substitute for direct appeal but rather a process for raising issues unknown or not available at trial, an issue known and available but not raised on direct appeal may not be raised in post-conviction proceedings."); *see Mills v. State,* 868 N.E.2d 446 (Ind. 2007).

[13]     Here, Boyd pleaded guilty on February 17, 2015. On March 19, 2015, Boyd moved to withdraw his guilty plea on the ground that he felt coerced into accepting the State's plea offer. After a hearing on May 1, 2015, the trial court denied Boyd's motion. Boyd did not pursue a direct appeal; rather, Boyd filed a petition for PCR on September 10, 2015. Boyd cannot now use Post-Conviction Rule 1 proceedings to assert claim(s) that he should have appealed directly. *See Mills,* 868 N.E.2d at 452. We cannot say that the PC court's findings on this issue are clearly erroneous.

## II.  *Ineffective Assistance of Trial Counsel*

[14]  Boyd appeals the PC court's denial of his claim of ineffective assistance of trial counsel.  Specifically, Boyd argues that Attorney Brinson failed to apprise him of ongoing plea negotiations with the State in a timely and proper manner.

[15]  To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that: (1) his or her counsel's performance was deficient, and (2) the petitioner was prejudiced by the deficient performance.  *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)), *reh'g denied, cert. denied*, 534 U.S. 830, 122 S. Ct. 73 (2001).  The failure to satisfy either prong will cause the claim to fail.  *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006).  Ineffective assistance of counsel claims, thus, can be resolved by a prejudice analysis alone. *Id*.

[16]  An attorney's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms.  *Woodson v. State*, 961 N.E.2d 1035, 1041 (Ind. 2012).  A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *McCullough v. State*, 973 N.E.2d 62, 74 (Ind. Ct. App. 2012), *trans. denied*.  "[A] defendant must offer strong and convincing evidence to overcome this presumption."  *Id*.  Isolated poor strategy, inexperience, or bad tactics does not necessarily constitute ineffective assistance of counsel.  *Id*.

[17] In analyzing prejudice in the context of a guilty plea, we review such ineffective assistance of counsel claims under *Segura v. State*, 749 N.E.2d 496 (Ind. 2001). Segura created two categories of claims and enunciated different treatments of each respective category, depending upon whether the ineffective assistance allegation related to (1) an unutilized defense or failure to mitigate a penalty, or (2) an improper advisement of penal consequences. *Willoughby v. State*, 792 N.E.2d 560, 563 (Ind. Ct. App. 2003) (citing *Segura*, 749 N.E.2d at 507), *trans. denied*.

[18] The PC court rejected Boyd's argument and found, in part:

> 10. The testimony of [Boyd] was that there was an offer of 22 years made to him prior to the trial date. Mr. Brinson could not recall any offer prior to the trial date, but did not dispute that there might have been a 22-year offer made to [Boyd].
>
> 11. However, there is no additional evidence of any other offers being made to Mr. Brinson, which were not conveyed to [Boyd]. Mr. Brinson conveyed the offer of 13 years to [Boyd] on the morning of trial, which is when Mr. Brinson received the offer from the State.
>
> 12. Therefore, [Boyd] has failed to prove his first claim by a preponderance of the evidence.

App. Vol. II pp. 17-19.

[19] Attorney Brinson, an experienced criminal defense attorney and former deputy prosecutor, testified that he "d[id]n't specifically recall all the plea negotiations

that took place before [Boyd's] trial"; however, he stated, "[i]f they say that I submitted him a plea offer of 22 years, then I must have, but I don't recall that." Tr. Vol. II pp. 44, 50. Asked whether he "failed to properly or timely advise the defendant of the plea negotiations between trial counsel and the State of Indiana," Attorney Brinson responded, "I don't think I failed to do that." *Id*. at 55.

[20] Boyd testified that, after the State initially charged him, Attorney Brinson brought him a written plea offer from the State "that said something about 22 years." *Id*. at 33. Boyd testified that he conferred with Attorney Brinson regarding the initial plea offer and that they agreed to reject it. Boyd testified that he did not receive another plea offer until the date of his trial, which offer Boyd accepted and wherein Boyd agreed to serve concurrent thirteen-year sentences.

[21] From our reading of the record, Boyd presented no evidence to support a finding that Attorney Brinson's representation fell below an objective standard of reasonableness or to rebut the strong presumption that Brinson rendered adequate assistance and exercised reasonable professional judgment in keeping Boyd apprised of plea negotiations with the State. All told, Boyd testified that, on two occasions, the State presented Attorney Brinson with plea offers for Boyd's consideration and that, on both occasions, Attorney Brinson relayed the plea offers to Boyd, discussed the plea offers with Boyd, and then relayed Boyd's decisions thereon to the State. Nor can Boyd establish prejudice where the evidence shows that Attorney Brinson counseled him to forgo a twenty-two

year sentence and that Boyd subsequently agreed, after conferring with Brinson, to accept a lesser, thirteen-year sentence. Accordingly, we agree with the PC court that Boyd has failed to demonstrate ineffectiveness of trial counsel. The PC court's finding is not clearly erroneous.

### III. Ineffective Assistance of PC Counsel

[22] Lastly, Boyd contends that he received ineffective assistance of PC counsel. It is well-settled that there is no federal or state constitutional right to counsel in post-conviction proceedings. *Hill v. State*, 960 N.E.2d 141, 145 (Ind. 2012).

> [Our supreme court] declared its approach to claims about performance by a post-conviction lawyer in *Baum v. State*, 533 N.E.2d 1200 (Ind. 1989). We observed that neither the Sixth Amendment of the U.S. Constitution nor article 1, section 13 of the Indiana Constitution guarantee[s] the right to counsel in post-conviction proceedings, and [we] explicitly declined to apply the well-known standard for trial and appellate counsel of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). The *Baum* Court noted that post-conviction pleadings are not regarded as criminal actions and need not be conducted under the standards followed in them. We held unanimously that a claim of defective performance "poses no cognizable grounds for post-conviction relief" and that to recognize such a claim would sanction avoidance of legitimate defenses and constitute an abuse of the post-conviction remedy.

> We therefore adopted a standard based on principles inherent in protecting due course of law - one that inquires "if counsel in fact appeared and represented the petitioner in a procedurally fair setting which resulted in a judgment of the court." As Justice DeBruler explained later, speaking for a majority of us, it is "not

> a ground for post-conviction relief that petitioner's counsel in a prior post-conviction proceeding did not provide adequate legal assistance," but such a contention could provide a prisoner with a basis for replying to a state claim of prior adjudication or abuse of process.

*Graves v. State,* 823 N.E.2d 1193, 1196-97 (Ind. 2005) (citations omitted). Accordingly, when tasked with reviewing the performance of post-conviction counsel, we look to the actual representation of post-conviction counsel to determine whether "[c]ounsel, in essence, abandoned [the] client" by failing to present any evidence in support of their client's claim. *Waters v. State,* 574 N.E.2d 911 911-12 (Ind. 1991). Such is not the case here.

[23] The PC record reveals that Attorney Blackard: (1) appeared, succeeded Attorney Brinson, and represented Boyd; (2) argued the motion to withdraw Boyd's guilty plea; (3) prepared and filed Boyd's petition for PCR; (4) argued on Boyd's behalf and questioned Boyd and Attorney Brinson at the hearing on Boyd's petition for PCR; and (5) prepared and tendered proposed findings of fact and conclusion of law regarding Boyd's petition for PCR.

[24] Based on the foregoing, we certainly cannot say that Attorney Blackard "abandoned" Boyd by failing to present evidence in support of Boyd's claims. *See, e.g., Graves,* 823 N.E.2d at 1197 (holding that post-conviction counsel did not abandon defendant where counsel appeared at the post-conviction relief hearing, directly examined defendant, and tendered affidavits).

# Conclusion

The PC court properly denied Boyd's petition for PCR. The trial court did not err in denying Boyd's motion to withdraw his guilty plea, and Boyd did not receive ineffective assistance of trial or PC counsel. We affirm.

Affirmed.

Brown, J., and Altice, J., concur.